UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

      -against-

RAYMOND BRYANT,

                Defendant.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  09/23/2020____

19-CR-80-01 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

      Defendant Raymond Bryant ("Defendant" or "Bryant") is charged by Indictment on one count of narcotics conspiracy, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A), for conspiring to distribute 280 grams and more of crack. The Indictment also charged Defendant with one count of possession of a firearm in furtherance of the narcotics conspiracy charged in Count One, in violation of 18 U.S.C. § 924(c) and one count of being a felon-in-possession of a firearm, in violation of 18 U.S.C. § 922(g). (Indictment, ECF No. 10.) Before the Court is Defendant's Motion to Suppress all of the evidence found pursuant to the searches of his residence and his motor vehicle. (Motion to Suppress (the "Motion"), ECF No. 30; Memorandum of Law in Support of Defendant's Pretrial Motions ("Def. Mem."), ECF No. 32). For the following reasons, Defendant's Motion is DENIED.

## BACKGROUND

      The facts herein are drawn from the criminal complaint filed in this matter (Complaint, ECF No. 2), the Indictment, and the parties' submissions (ECF Nos. 30–33).

      In May 2018, the FBI, City of Newburgh Police Department, and Orange County Sheriff's Office began actively investigating Defendant Raymond Bryant, a/k/a "Ray Love," and Trevor Edwards for narcotics trafficking in Newburgh. (Government's Opposition to Defendant's Pretrial

Motions ("Gov. Opp."), ECF No. 33, at 3.)   On seven occasions, a confidential informant (the "CI") working with the FBI made controlled purchases from Bryant.  (Complaint at ¶ 5.)  During some of these controlled purchases, Bryant was assisted by Edwards.  (*Id.* at ¶ 5(f), (h).)  The CI bought a total of approximately 40 grams of crack during the seven buys.  (*Id.* at ¶ 5.)

On December 11, 2018, the Honorable Judith C. McCarthy signed a criminal complaint charging Bryant and Edwards with participating in a narcotics conspiracy, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(B).  (*Id.*)  On the same day, Judge McCarthy also signed search warrants for Bryant's residence at Apartment 1N at 4 Steward Avenue in Newburgh (the "Bryant Residence"), and a black Kia Optima (the "Kia") registered in Bryant's name.  (Rubin Decl. ¶¶ 5, 8.)  Each search warrant issued based on an affidavit sworn out by FBI Special Agent Christopher Bryceland (Declaration of Andy Rubin ("Rubin Decl."), ECF No. 31, Ex. D ("the Bryant Residence Affidavit"); Ex. E (the "Kia Affidavit").

On December 13, 2018, FBI agents and officers arrested Bryant and Edwards pursuant to the complaint and executed the search warrants for the residence and the Kia.  (Rubin Decl. ¶ 4; Gov. Opp. at 3.)  The FBI agents and officers gained entry to the residence by breaking down the door without announcing their presence, identity or the purpose of their entry, and did not show Defendant the warrant that permitted the entry and search.  (Rubin Decl. ¶ 6 & Ex. B.)

In the residence, agents found, among other things, cash, narcotics paraphernalia, narcotics, and a loaded firearm.  (Rubin Decl. ¶ 6 & Ex. F; Gov. Opp. at 3.)  In the Kia, agents found a hidden compartment, or trap, containing two packages: one containing 200 grams of cocaine, consistent with powder cocaine, and the other containing approximately 270 grams of cocaine, consistent with crack cocaine, and tens of thousands of dollars in cash.  (Rubin Decl. ¶ 10; Gov. Opp. at 3–4.)

2

On February 13, 2019, a grand jury returned an indictment (the "Indictment") charging Bryant and Edwards with one count of narcotics conspiracy, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A), for conspiring to distribute 280 grams and more of crack.  (*See* Indictment.)  The Indictment also charged Bryant with one count of possession of a firearm in furtherance of the narcotics conspiracy charged in Count One, in violation of 18 U.S.C. § 924(c) and one count of being a felon-in-possession of a firearm, in violation of 18 U.S.C. § 922(g).  (*Id.*)

Edwards has since pleaded guilty to a superseding information, charging him with narcotics conspiracy in violation of 21 U.S.C. §§ 846 and 841(b)(1)(B), for distributing 28 grams and more of crack and 500 grams and more of cocaine.  (*See* ECF Entry Dated June 27, 2019.)

Bryant has moved to suppress all of the evidence found pursuant to the searches of the Bryant Residence and the Kia.

### DISCUSSION

**I.**     **Defendant's Motion to Suppress Evidence from Searches of Residence and Vehicle**

Defendant argues the evidence seized from the Bryant Residence and the Kia should be suppressed because: (1) the Bryant Residence Affidavit had insufficient probable cause (Motion at 6–8); (2) the warrant should not have included a "no-knock provision" (*id*. at 8–9); (3) the information in the Bryant Residence Affidavit and the Kia Affidavit were too stale to support issuance of the warrant (*id*. at 9–11); and (4) the agents failed to file a warrant return.  (*Id*. at 10.)

The Fourth Amendment prohibits "unreasonable searches and seizures," and the Warrants Clause mandates that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  U.S. Const. Amend. IV.  For a search warrant to be considered valid, the law requires there be "probable cause to believe that a crime has been, is being, or is about to be committed . .

3

. ." *United States v. Wagner*, 989 F.2d 69, 71 (2d Cir. 1993).  The probable-cause determination "is not overly strict."  *United States v. Martin*, 426 F.3d 68, 74 (2d Cir. 2005).  "Presented with a warrant application, [a] judge must 'simply . . . make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *Id.* (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).

"The quanta of proof necessary to establish probable cause is 'only the probability, and not a prima facie showing, of criminal activity.'" *Wagner*, 989 F.2d at 72 (quoting *Gates*, 462 U.S. at 235).  In assessing probabilities, "a judicial officer must look to 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" *Walczyk v. Rio*, 496 F.3d 139, 156 (2d Cir. 2007) (quoting *Gates*, 462 U.S. at 231).  "[T]he resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." *United States v. Smith*, 9 F.3d 1007, 1012 (2d Cir. 1993) (quoting *United States v. Ventresca*, 380 U.S. 102, 109 (1965)). Such determinations must be approached in a practical way, because "probable cause is a flexible, common-sense standard." *Gates*, 462 U.S. at 231–32; *Texas v. Brown*, 460 U.S. 730, 742 (1983).  Additionally, the totality-of-the-circumstances approach includes a recognition of the training and experience of law enforcement agents in assessing human behavior and evidence.  *See Gates*, 462 U.S. at 231–32.

### a.   Challenge to Bryant Residence Affidavit for Insufficient Probable Cause

First, Defendant argues that the Bryant Residence Affidavit, submitted in support of the search warrant for the Bryant Residence, lacked sufficient probable cause.  In the Bryant Residence Affidavit and the Kia Affidavit (the "Affidavits"), Agent Bryceland explained that Defendant had

been selling narcotics, over the course of at least three months (May through July 2018), to a confidential informant. (Kia Affidavit ¶¶ 5–6, Bryant Residence Affidavit ¶¶ 5–6). Based on these Affidavits, Judge McCarthy concluded that there was probable cause as of December 11, 2018, that both the Bryant Residence and the Kia would contain evidence of the subject offenses, such as drugs, drug proceeds, and/or documents related to drug dealing.

Once a warrant has been issued by a judge and executed, the duty of a court reviewing a magistrate judge's probable cause determination on a motion to suppress is far more limited: its task is "simply to ensure that the magistrate had a 'substantial basis for . . . conclud[ing]' that probable cause existed." *Gates*, 462 U.S. at 238–39 (quoting *Jones v. United States*, 362 U.S. 257, 271 (1960)). The issuing magistrate's decision is "entitled to substantial deference, and doubts should be resolved in favor of upholding the warrant." *United States v. Rosa*, 11 F.3d 315, 326 (2d Cir. 1993) (internal quotation marks omitted); *see also Wagner*, 989 F.2d at 72 (reversing suppression order). Indeed, the magistrate's "finding of probable cause is itself a substantial factor tending to uphold the validity of [the] warrant." *United States v. Travisano*, 724 F.2d 341, 345 (2d Cir. 1983). "Such deference derives not only from the law's recognition that probable cause is 'a fluid concept' that can vary with the facts of each case, but also from its 'strong preference' for searches conducted pursuant to a warrant." *United States v. Clark*, 638 F.3d 89, 93 (2d Cir. 2011) (quoting *Gates*, 462 U.S. at 232, 236). Thus, as described in *Clark*, the "task of a reviewing court is simply to ensure that the 'totality of the circumstances' afforded the magistrate 'a substantial basis' for making the requisite probable cause determination." *Clark*, 638 F.3d at 93 (quoting *Gates*, 462 U.S. at 238).

### i.       Training and Experience of the Affiant

Defendant criticizes the Affidavits for stating Agent Bryceland's experience in conclusory terms, without specific reference to the nature of Bryceland's training and the number of investigations that he had participated in.  (Motion at 6–7.)  In both Affidavits, however, Agent Bryceland described his 22 years' experience as an FBI Special Agent, and his participation in "numerous" prior investigations into narcotics trafficking.   (Kia Affidavit ¶ 1; Bryant Residence Affidavit ¶ 1.)  His experience includes conducting or participating in "surveillance, undercover transactions, the introduction of undercover agents, the execution of search warrants, debriefings of informants, reviews of taped conversations and drug records," as well as participating in "investigations that included the interception of wire and electronic communications." (*Id.*)  These are all indications that Agent Bryceland has had significant experience relevant to the investigation of narcotics trafficking.  The Court is thus unpersuaded by Defendant's attempt to cast doubt on the training and experience of Agent Bryceland, and, by extension, the proper weight that should be afforded to his conclusions.

### ii.       Comparatively Fewer Observations of the Residence

Next, Defendant contends that there were "very limited observations" that would suggest the residence was being utilized to conduct the narcotics operation, and the CI did "not provide any supporting evidence that the apartment was in any way a location where drugs were stored or processed." (Motion at 7–8.)

With respect to the Bryant Residence, Agent Bryceland stated that on three occasions, Bryant was seen at the residence right before the controlled purchases.  (Bryant Residence Affidavit ¶ 6(a)–(d)).  Further, in the Bryant Residence Affidavit, Agent Bryceland described surveillance he had participated in on November 29, 2018, less than 2 weeks before issuance of

the search warrant, in which he observed Bryant leave the residence and complete what Agent Bryceland believed, based on his training and experience, to be a narcotics transaction. (Bryant Residence Affidavit ¶ 6(e)).

Certainly, the Kia Affidavit references more observations and controlled purchases than the Bryant Residence Affidavit. Indeed, Defendant concedes that "the information provided to the court, if believed clearly establishes that the car . . . was used in the drug transactions observed during the controlled buys." (Motion at 11.) Nevertheless, the Court disagrees that Agent Bryceland's observations were "very limited" with respect to the residence—the Bryant Residence Affidavit describes three controlled purchase observations and one surveillance observation involving the residence which, in Bryceland's view, were consistent with drug trafficking. For example, during the July 26, 2018 controlled purchase, Defendant was observed departing his residence to a meeting spot with the CI, after which Defendant returned to the residence, then travelled back to the same meeting spot to meet again with CI. (Bryant Residence Affidavit ¶ 6(d).) Taking the totality of the circumstances into account, viewed practically and with common sense, the Court concludes that Judge McCarthy had a "substantial basis," *Gates*, 462 U.S. at 238–39, for finding probable cause to support the search of the Bryant Residence.

### b. Challenge to "No-Knock Provision" of Bryant Residence Search Warrant

Defendant argues that the "no-knock" authorization included in the Bryant Residence Search Warrant was not supported by the Bryant Residence Affidavit. The affidavit provides: "were the Subject to receive any notification of the search, the Subject may attempt to destroy evidence, flee or take dangerous action to protect any narcotics or narcotics proceeds." (Bryant Residence Affidavit ¶ 12.)

The Fourth Amendment includes an obligation that "law enforcement officers must announce their presence and provide residents an opportunity to open the door," including while executing valid search warrants. *See Hudson v. Michigan*, 547 U.S. 586, 589 (2006) (citing *Wilson v. Arkansas*, 514 U.S. 927, 931–932 (1995)). The "knock-and-announce" requirement is also a statutory requirement for federal warrants. *See* 18 U.S.C. § 3109 ("The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant").

However, law enforcement officers can execute search warrants without knocking, when there is "reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or that it would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence." *See Richards v. Wisconsin*, 520 U.S. 385, 394 (1997). The Second Circuit has thus reasoned that judges can issue warrants that specifically authorize execution without knocking. *United States v. Tisdale*, 195 F.3d 70, 72 (2d Cir. 1999) ("*Richards* approved the issuance of no-knock warrants"). Further, even if such issuance was invalid, the "good faith" exception still applies, and "officers c[an] rely in good faith on the no-knock warrant." *Id.* at 73.

Here, given that the FBI was investigating a large-scale narcotics trafficking operation, the Bryant Residence Affidavit provides sufficient factual basis to conclude that there was "reasonable suspicion" that "knocking and announcing" would jeopardize the investigation. *Richards*, 520 U.S. at 394. Moreover, regardless of the propriety of the issuance of a "no knock" warrant, or whether officers relied on such a warrant in good faith, the Supreme Court and Second Circuit have held that there is no basis to suppress, either under the Fourth Amendment or § 3109, evidence obtained

for a violation of the knock and announce requirement.  *United States v. Acosta*, 502 F.3d 54, 61 (2d Cir. 2007) ("a claim by a defendant that federal officers violated the knock-and-announce rule under either the Fourth Amendment or 18 U.S.C. § 3109 cannot form the basis for suppression of the evidence obtained in the ensuing search"); *Hudson*, 547 U.S. 586 (no basis for suppression under the Fourth Amendment).  Accordingly, no evidence will be suppressed on the grounds of the "no-knock" provision.

### c.   Staleness of Information Underlying Bryant Residence and Kia Affidavits

As to the issue of staleness, Defendant argues that the Affidavits were made almost entirely on information and observations made during the period of the controlled buys, May 2018 through July 2018.  There was one additional observation in November 29, 2018.  Defendant highlights that the Affidavits were not signed until December 11, 2018.  In addition, Defendant emphasizes that the Government had a GPS tracking device on the Kia for over two months.

"In determining whether probable cause exists, the magistrate is required to assess whether the information adduced in the application appears to be current, *i.e.*, true at the time of the application, or whether instead it has become stale."  *Rivera v. United States*, 928 F.2d 592, 602 (2d Cir. 1991).  "[T]he principal factors in assessing whether or not the supporting facts have become stale are the age of those facts and the nature of the conduct alleged to have violated the law."  *United States v. Diaz*, 176 F.3d 52, 109 (2d Cir.1999) (quoting *United States v. Gallo*, 863 F.2d 185, 192 (2d Cir.1988)) (internal quotation marks omitted).

In investigations of ongoing narcotics operations, the Second Circuit has held that "intervals of weeks or months between the last described act and the application for a warrant did not necessarily make the information stale."  *Id.*  Furthermore, "[f]acts of past criminal activity that by themselves are too stale can be sufficient if the affidavit also establishes a pattern of

continuing criminal activity so there is reason to believe that the cited activity was probably not a one-time occurrence."  *Wagner*, 989 F.2d at 75; *United States v. Rowell*, 903 F.2d 899, 903 (2d Cir. 1990) ("Narcotics conspiracies are the very paradigm of the continuing enterprises for which the courts have relaxed the temporal requirements of non-staleness.") (quoting *United States v. Feola*, 651 F. Supp. 1068, 1090 (S.D.N.Y. 1987), *aff'd mem.*, 875 F.2d 857 (2d Cir.), *cert. denied*, 493 U.S. 834 (1989).

Agent Bryceland observed what he believed was a narcotics transaction from Bryant's residence within two weeks of obtaining the warrant. Likewise, he described what he believed was a narcotics transaction from Bryant's car within a few months of obtaining the warrant for the Kia. With respect to the Kia, Agent Bryceland stated that on several occasions, Bryant was seen using the Kia immediately before the controlled purchases, (Kia Affidavit ¶ 6), and that Agent Bryceland had participated in surveillance, as recently as September 26, 2018—about two and a half months before issuance of the warrant—in which he observed Bryant driving the Kia to meetings, which in Agent Bryceland's training and experience, appeared to be narcotics transactions.  (*Id.* ¶ 8.)

Given these timeframes and the continuous nature of the narcotics conspiracy that is charged in the Indictment and described in the supporting affidavit, the Court rejects Defendant's staleness challenge.  *See, e.g.*, *Rowell*, 903 F.2d at 903 (no staleness from lapse of eighteen months between informant's statement and wiretap regarding narcotics activity); *United States v. Beltempto*, 675 F.2d 472, 476–79 (2d Cir. 1982) (no staleness from two month delay regarding single incident of illegal drug importation); *United States v. Enoa*, No. 93 Cr. 285(KTD), 1993 WL 404154, at *2 (S.D.N.Y. Oct. 7, 1993) (no staleness from four month delay regarding ongoing and widespread conspiracy to distribute narcotics.).  *Cf. United States v. Brooks*, 594 F.3d 488,

494 n.4 (6th Cir. 2010) (noting drug sale information that is six months old is stale for establishing probable cause on its own).

### d. **Rule 41 Return**

Defendant points out that, as of filing, it appeared the warrant returns were not filed with the Court. Federal Rule of Criminal Procedure 41 requires, among other things, that the "officer executing the warrant must promptly return it—together with a copy of the inventory—to the magistrate judge designated on the warrant." Fed. R. Crim. P. 41(f)(1)(D). While the Second Circuit does not "countenance" "lack of compliance" with the "technical requirements" of Rule 41, "violations of Rule 41 alone should not lead to exclusion unless (1) there was 'prejudice' in the sense that the search might not have occurred or would not have been so abrasive if the Rule had been followed, or (2) there is evidence of intentional and deliberate disregard of a provision in the Rule." *United States v. Allen*, 169 F. App'x 634, 636 (2d Cir. 2006) (citing *United States v. Burke*, 517 F.2d 377, 386–87 (2d Cir. 1975)). As a result, a failure to file a prompt return "does not require suppression" absent the two exceptions laid out in *Allen*. *See United States v. Jacobson*, 4 F. Supp. 3d 515, 528 (E.D.N.Y. 2014); *see also United States v. Dudek*, 530 F.2d 684, 688 (6th Cir. 1976).

The two *Allen* exceptions are not applicable here. Defendant offered nothing to show that he was prejudiced by any violation of Rule 41, or that agents violated Rule 41 intentionally and with deliberate disregard. Subsequent to the filing of the instant Motion, the Government clarified that the FBI did in fact return the warrants and inventories to the Clerk of the Court, but failed to make copies of the returns before filing them. The returns are appended to the Government's Opposition. (Gov. Opp. Exs. A & B.)

## CONCLUSION

For the foregoing reasons, Defendant's Motion is DENIED.  The Clerk of the Court is respectfully directed to terminate the motion at ECF No. 30.


Dated:   September 23, 2020                      SO ORDERED:
            White Plains, New York

                                                NELSON S. ROMÁN
                                     United States District Judge